IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| G&G CLOSED CIRCUIT EVENTS, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANTONIO HERNANDEZ, a/k/a ANTONIO )<br>HERNANDEZ CONTRERAS Individually and )<br>d/b/a Mercados el Ahorro Mingo of Tulsa; )<br>ROSALIA HERNANDEZ, Individually and )<br>d/b/a Mercados El Ahorro Mingo of Tulsa; )<br>HERNANCON DISTRIBUTORS, LLC d/b/a )<br>Mercados El Ahorro Mingo of Tulsa, a/k/a )<br>Mercados El Ahorro. )<br>)<br>Defendants. ) | Case No. 19-CV-221-TCK-JFJ |

**OPINION AND ORDER**

Before the Court is the Motion for Summary Judgment filed by the Plaintiff, G&G Closed Circuit Events, LLC ("Plaintiff"). Docs. 31-32. Defendants Antonio Hernandez, a/k/a Antonio Hernandez Contreras, individually and d//b/a Mercados El Ahorro Mingo of Tulsa; Rosalia Hernandez, individually and d/b/a Mercados el Ahorro Mingo of Tulsa; and Hernancon Distributors, LLC d/b/a Mercados El Ahorro Mingo of Tulsa oppose the motion. Doc. 35.

**I. Introduction**

In this lawsuit, Plaintiff, which held the exclusive nationwide television distribution rights to a May 6, 2017 boxing match between Saul Alvarez and Julio Cesar Chavez, Jr., alleges the defendants, in violation of 47 U.S.C. §605(a), intercepted and exhibited the match at Mercados El Ahorro Mingo of Tulsa (the "Restaurant"). Plaintiff seeks statutory and enhanced damages pursuant to 47 U.S.C. §605(e)(3)(C)(i)(II) and §605(e)(3)(C)(ii).

Defendants deny that they intercepted and exhibited the match, and contend that they only showed nonexclusive post fight interviews that were available on other legally accessible sources or free to the public.

## II. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* However, the party opposing a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party opposing a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

A movant that "will not bear the burden of persuasion at trial need not negate the nonmovant's claim, "but may "simply . . . point[] out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal citations omitted). If the movant makes this prima facie showing, "the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013 (1992)). "In a response to a motion for

summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial. The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome convincing presentation by the moving party." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (internal citations omitted).

### III. Material Facts

Plaintiff was granted the exclusive nationwide television distribution rights to *Saul "Canelo" Alvarez v. Julio Cesar Chavez, Jr. Championship Fight Program*, telecast nationwide on Saturday, May 6, 2017 (the "Program"). Doc. 32, Ex. 1, Nicholas Gagliardi Affidavit, ¶3. The distribution rights encompassed all undercard events, as well as the main event and all color commentary. *Id.*, ¶7.

Pursuant to the contract granting it Program distribution rights, Plaintiff entered into sub-licensing agreements with various commercial entities, including entities in Oklahoma, by which it granted limited sub-licensing rights to permit the public exhibition of the Program. *Id.*, ¶3. At no time did the restaurant ever lawfully license the Program from Plaintiff. *Id.*, ¶7. It was not possible for Defendants to broadcast the Program lawfully at the restaurant without the Plaintiff's authorization. *Id.*, ¶¶7, 9.

At 11:22 p.m. on May 6, 2017, private investigator Nicolin Decker entered Mercado El Ahorro at 3121 S. Mingo Road in Tulsa, Oklahoma 74146. Doc. 32, Ex. 2, Affidavit of Nicolin Decker at p. 1. She observed two 32-inch flatscreen televisions in the restaurant, both of which were showing a post-fight interview with Alverez. *Id.* Decker estimated the capacity of the establishment to be approximately 23 people, and there were 18 patrons. *Id.* Decker left the

establishment at 11:24 p.m.  The interception of the broadcast appeared to have been made via satellite.  *Id.*, Photographs taken by Decker.

The commercial licensing fee for an establishment the size of Mercados El Ahorro was $2,200.  *Id.*, Ex. 1, Gagliardi Affidavit, ¶8.  Defendants did not pay the commercial licensing fee to broadcast the program.  *Id.* at ¶¶3, 7.  Hernacon Distributors LLC d/b/a Mercados El Ahorro Mingo was the Beverage License holder for the Establishment on the date of the Event.  *Id.*, Ex. 3, Tulsa County Beverage Permit.

In their responses to Plaintiff's Requests for Admission, Defendants admitted that: the event was shown and watched at the Establishment on May 6, 2017; Rosalia and Antonio Hernandez were present at the Establishment during the Event; the Establishment exhibits television programming that is believed to be of interest to its patrons; and that they intentionally exhibited or broadcast the Event at the Establishment.  Doc. 32, Exs. 4-6, Defendants' Responses to Plaintiff's Requests for Admission, ¶¶5, 7, 21.  But in their Combined Response to Plaintiff's Motion for Summary Judgment, Defendants denied the allegations of Doc. 32, Exs. 4-6, and attached Amended Responses to Plaintiff's First Requests for Admission, in which they deny Requests for Admission 4, 5 and 7.  Doc. 35, ¶¶5, 7, 21 and Exs. 1-3.

However, Fed. R. Civ. Proc. 36(b) provides in pertinent part:

**Effect of an Admission; Withdrawing or Amending It.**

A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended.  Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.

Because Defendants failed to seek leave to withdraw or amend their responses in compliance with Rule 36(b), their Amended Responses to Plaintiff's First Requests for Admission are hereby stricken.

### V. Analysis

#### 1. Liability

Federal law provides that it is illegal to "intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). Further, 47 U.S.C. § 605(a) prohibits any person from intercepting radio communication and "divulge[ing] or publish[ing] the existence, contents, substance, purport, effect or meaning of such intercepted communication. . . ." Both statutes impose strict liability for violations. *See Don King Productions/Kingvision v. Lovato*, 1196 WL 682006, *3 (N.D. Cal. Nov. 15, 1996) ("The Cable Communications Act imposes strict liability under 47 U.S.C. §§ 553 and 605."). *See also Joe Hand Promotions, Inc. v. Easterling*, 2009 WL 1767579, *4 (N.D. Ohio June 22, 2009) ("There are no mens rea or scienter elements for a non-willful violation of 47 U.S.C. §605(a), or its counterpart governing unauthorized interception of cable service under 47 U.S.C. §553(a) . . . [t]hese are strict liability offenses with no good faith defense.").

The undisputed evidence in this case establishes that:

- Defendants showed the fight program at Mercados el Ahorro in contravention of the rights of the Plaintiff; and

- Defendants failed to pay the commercial license fee for the event and therefore did not have authorization to broadcast the fight;

Accordingly, Plaintiff is entitled to summary judgment against Defendants on the issue of liability.

**2. Damages**

Plaintiff seeks statutory and enhanced attorney fees under 47 U.S.C. § 605, which authorizes a court to impose up to $10,000 in statutory damages and up to $100,000 in enhanced damages if the defendant willfully intercepted the broadcast. It would be an abuse of discretion for the Court to award plaintiff the maximum damages of $110,000 merely to deter others from illegally broadcasting programs. *See Joe Hand Promotions, Inc. v. John M. McLemore, et al.*, 4:10-CV-772-CVE-TLW (N.D. Okla. Sept. 26, 2011) (Doc. 28 at 2). Instead the Court must determine what amount of damages is appropriate in this case to compensate plaintiff and punish the defendants for their illegal conduct. *Id.* When awarding enhanced damages, "courts strike a balance between deterring other incidents of piracy by these defendants and others, and not making the award such that it will put a small business out of business (at least for a first offense).'" *Id.* (quoting *Zuffa, LLC v. Al-Shaikh*, 2011 WL 1539878, *8 (S.D. Ala. Apr. 21, 2011).

In support of its request for damages, Plaintiff submitted the affidavit of its president, Nicolas Gagliardi, a Rate Card for the event, and the affidavit of the investigator Nicolin Decker. (Doc. 32, Exs.1-2). The minimum fee to broadcast the Program in an establishment with a capacity up to 100 people for that program was $2,200.00. Ex. 1, Gagliardi Affid. at 3.

In *McLemore*, plaintiff's investigator observed 84 people in the defendant's restaurant, the sublicense fee would have been $875, no cover fee was charged, and the event was broadcast on three television screens. 4:10-CV-772-TLW, Doc. 28 at 3. The court reasoned that a statutory damages award of $2,500 "compensates plaintiff for any fee that should have [been] paid by defendants to obtain a sublicense to broadcast the program and for disgorgement of any possible financial benefits derived by defendants from displaying the illegally intercepted program." *Id*. The Court awarded enhanced damages of $2,500, finding this amount "sufficient

to punish defendants for their illegal conduct and deter future violations of § 605," but "not so substantial that it will likely put defendants out of business." *Id.* at 4.

Similarly, in *Joe Hand Promotions, Inc. v. George Ducummon*, 2012 WL 1410262 (N.D. Okla. April 23, 2012), the Court found $2,000 the appropriate amount for statutory damages and $2,000 the appropriate enhancement, where the broadcast fee for the program was $750, no cover fee was charged, no more than five to eight patrons were in the defendant bar, and there was no evidence of repeated violations by defendants.

In this case, the sublicense fee Defendants should have paid to broadcast the Program was $2,200. No cover fee was charged, and there were no more than 19 patrons in the establishment during the broadcast. Additionally, Plaintiff has presented no evidence of a financial benefit to Defendants, or of repeated violations by Defendants. Adopting the reasoning set forth in *McLemore* and *Ducummon*, the Court finds $2,200 to be the appropriate amount for statutory damages and $2,200 to be an appropriate enhancement, for a total damage award of $4,400. This amount covers the cost of the commercial license as well as any minor financial benefit Defendants received, and serves as a deterrent to future violations without putting Defendants out of business.

**ENTERED THIS 1st DAY OF DECEMBER, 2020.**

*(signature)*
**TERENCE KERN**
**United States District Judge**